AARON D. FORD
  Attorney General
Jessica E. Whelan (Bar No. 14781)
  Chief Deputy Solicitor General - Litigation
Sabrena K. Clinton (Bar No. 6499)
  Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3416 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| COINBASE FINANCIAL MARKETS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> AARON D. FORD, in his official capacity as Attorney General of Nevada; MIKE DREITZER, in his official capacity as Chairman of the Nevada Gaming Control Board; GEORGE ASSAD, in his official capacity as a Member of the Nevada Gaming Control Board; CHANDENI K. SENDALL, in her official capacity as a Member of the Nevada Gaming Control Board; JENNIFER TOGLIATTI, in her official capacity as a Member of the Nevada Gaming Commission; ROSA SOLIS-RAINEY, in her official capacity as a Member of the Nevada Gaming Commission; BRIAN KROLICKI, in his official capacity as a Member of the Nevada Gaming Commission; GEORGE MARKANTONIS, in his official capacity as a member of the Nevada Gaming Commission; ABBI SILVER, in her official capacity as a member of the Nevada Gaming Commission, <br><br> Defendants. | Case No. 2:26-cv-00256-CDS-MDC <br><br><br> **STATE DEFENDANTS' OPPOSITION TO COINBASE'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**STATE DEFENDANTS' OPPOSITION TO COINBASE'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendants AARON D. FORD, MIKE DREITZER, GEORGE ASSAD, CHANDENI K. SENDALL, JENNIFER TOGLIATTI, ROSA SOLIS-RAINEY, BRIAN KROLICKI, GEORGE MARKANTONIS and ABBI SILVER, by and through counsel, Jessica E. Whelan, Chief Deputy Solicitor General – Litigation, and Sabrena K. Clinton, Senior Deputy Attorney General, of the State of Nevada, Office of the Attorney General, hereby file their opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, filed on February 4, 2026.

## INTRODUCTION

Coinbase Financial Markets, Inc. ("Coinbase") seeks federal assistance in its ongoing efforts to violate Nevada gaming laws and interfere with an ongoing state court enforcement proceeding governed by state law. Coinbase incorrectly asserts, as have its predecessors in the online sports betting field, that their self-certification with the CFTC gives them blanket immunity from complying with Nevada law. It does not. And in three separate cases, the federal court has agreed with that conclusion. The parties are actively litigating these same claims and defenses in the First Judicial District Court, Carson City, Case No. 26-OC 00030 1B (the "State Court Enforcement Action"). Coinbase—rather than seek to defend its claims in state court—now seeks emergency relief that would restrict a state court from preventing egregious violations of state law.

This Court should refuse to take the bait. Emergency relief must be denied for at least four reasons: First, the motion is moot in light of the state court's issuance of an *ex parte* temporary restraining order on February 5, 2026. Second, the Anti-Injunction Act prevents exactly this sort of gamesmanship between the dually sovereign judicial systems. Coinbase has not identified compliance with the narrow exceptions that would permit a federal court to enjoin a state court action. Third, *Younger* abstention prevents federal courts from interfering in ongoing criminal proceedings or civil proceedings of important state interest. Civil enforcement of Nevada's gaming laws is of utmost importance to the

state and strongly counsel against interference with the state court enforcement action. Fourth, if the Court considers the merits, Coinbase is unlikely to succeed on any of its claims. Specifically, all so-called "prediction markets" who have sought to evade state law by claiming the CFTC has exclusive jurisdiction have failed: Chief Judge Gordon has ruled in three related cases that similar event contracts are not "swaps" within the meaning of the CFTC's jurisdiction, and are therefore likely to remain subject to concurrent state regulation, including licensure and supervision from the Nevada Gaming Control Board. *See, e.g., N. Am. Derivatives Exch., Inc. v. Nevada Gaming Control Bd.,* No. 2:25-CV-00978-APG-BNW, 2025 WL 2916151, at *11 (D. Nev. Oct. 14, 2025) (CFTC's jurisdiction extends only to swaps, and "based on the statutory language and Congressional intent, [Plaintiff's] contracts on the outcome of live events are not "swaps" that fall within the CFTC's exclusive jurisdiction in 7 U.S.C. § 2(a)(1)(A)."). Coinbase regurgitates the same failed arguments here and is unlikely to succeed on the merits for the same underlying reasons.

This Court should deny the TRO and preliminary injunction.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Nevada is the gold standard of gaming regulation, and the state has a long history of permitting legalized gaming under a comprehensive regulatory scheme. Nevada law requires all gaming activity be strictly regulated and licensed, as the gaming industry is "vitally important to the economy of the State and the general welfare of the inhabitants." NRS 463.0129(1)(a). In Nevada, "gaming" is synonymous with "gambling" and includes any regulated game. NRS 463.0153. A "game" subject to regulation in Nevada includes "any game played with . . . equipment or any mechanical or electronic device or machine for money . . . or any representative of value" that is accessible in Nevada. NRS 463.0152. A game subject to regulation in Nevada includes, among other things, a "sports pool." NRS 463.160. A "sports pool" is defined as "the business of accepting wagers on sporting events or other events by *any system or method of wagering*." NRS 463.0193 (emphasis added).

Coinbase's recent activities violate multiple provisions of Nevada law. Most obviously, Coinbase offers "event contracts" to individuals located in Nevada that allow

users to wager on the outcome or characteristics of a particular sporting event, and it does so without a Nevada license. For example, as of February 1, 2026, a user could buy an event contract on Coinbase for $100 that would pay out $303 if the New England Patriots win the Superbowl—essentially, approximately 3:1 odds. COINBASE, *The Big Game*, https://www.coinbase.com/predictions/trending/the-big-game (last accessed February 2, 2026). Regardless of the mechanism or method to facilitate this wager, this transaction is a sports pool under Nevada law. *See, e.g.,* NRS 463.0152; 463.0193.

On February 2, 2026, The State of Nevada, acting through the Nevada Gaming Control Board (the "Board") filed the State Court Enforcement Action based on its investigation of Coinbase's activities in the state. A copy of the Complaint in that action is attached as **Exhibit A.** Acting pursuant to its authority under Nevada law, the Board seeks declaratory and injunctive relief for Coinbase's illegal actions. *Id.* The Board also filed an *ex parte* application for temporary restraining order and motion for preliminary injunction, a copy of which is attached as **Exhibit B.**[1]

In response, on February 3, 2026, Coinbase filed its Preliminary Opposition to Plaintiff's *Ex Parte* Temporary Restraining Order and Motion for Preliminary Injunction and Request for Opportunity to File a Full Opposition and to Be Heard Thereon, a copy of which is attached as **Exhibit C.** That same day, the parties submitted, at the request of the state court, respective proposed orders on the Application for *Ex Parte* Restraining Order. Coinbase's proposed order is attached hereto as **Exhibit D**, and the Board's proposed order is attached hereto as **Exhibit E**.

On February 5, 2026, the state court signed the Board's proposed order granting its Application for *Ex Parte* Temporary Restraining Order and set a hearing for February 17, 2026 at 2:00 p.m. A copy of the state court order is attached hereto as **Exhibit F**.

///

---

[1] Exhibit 1 to Exhibit B, Declaration of Jessica E. Whelan, gives additional detail into the Board's public guidance regarding sporting and other events contracts in October of 2025, Coinbase's actions since that guidance was issued, and the harms to Nevada as a result of those actions.

Coinbase is only the latest market entrant to seek cover for its illegal activities under the guise of financial regulation. Like other "prediction markets" before it, Coinbase purports to rely on its listing with the Commodity Futures Trading Commission ("CFTC") to claim they are not subject to Nevada's gaming laws.[2] Three other operators, who offer online sports and/or event contracts in a manner similar to Coinbase, have fought this battle on similar terrain and lost. *See North American Derivatives Exchange, Inc. v. State of Nevada*, Case No. 2:25-cv-00978-APG-BNW, ECF No. 105 (D. Nev. Oct. 14, 2025) (finding that events contracts are not swaps falling within the CFTC's exclusive jurisdiction and denying motion for preliminary injunction to prevent regulation by the Board); *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, ECF No. 142, (D. Nev. Nov. 24, 2025) (dissolving preliminary injunction and finding that Kalshi was unlikely to succeed on the merits); *Robinhood Derivatives, LLC v. Dreitzer*, Case No. 2:25-cv-01541-APG-DJA, ECF No. 7 (D. Nev. Nov. 25, 2025) (same). This Court should follow suit.

## ARGUMENT

Multiple jurisdictional limits and comity doctrines prevent the Court from granting Coinbase the extraordinary relief it seeks. In addition, Coinbase cannot demonstrate irreparable harm or likelihood of success on the merits from its blatant decision to forgo compliance with longstanding state regulation. And the balance of interests tips sharply in State Defendants' favor.

### I. Coinbase's Motion Is Moot in Light of the State Court's Order Granting a Temporary Restraining Order Against Coinbase.

Settled law holds that "a case may be rendered moot not only by events which occurred prior to the filing of a complaint, but also by subsequent events which deprive the case of 'its character as a present, live controversy.'" *Johnson v. Nationstar Mortg. LLC*, No. 2:14-cv-0103-GMN-PAL, 2015 WL 1546809, at *3 (D. Nev. Apr. 7, 2015) (quoting *Hall*

---

[2] Because this case is in its infancy and no discovery has been conducted, State Defendants do not know which event contracts are registered with the CFTC and through which mechanism. State Defendants do not concede that every contract offered by Coinbase is validly registered with the CFTC. Regardless, any sports pool that Coinbase offers is unlawful under Nevada law because it is unlicensed with the State.

*v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969)). Here, events both before and after the filing of Coinbase's complaint render its Motion moot.

Coinbase's Motion seeks "a preliminary injunction to prevent Defendants from enforcing preempted Nevada law against Coinbase," as well as "a temporary restraining order to maintain the status quo pending this Court's resolution of Coinbase's motion for a preliminary injunction." ECF No. 4, 25. At the time the Motion was filed, however, the "status quo" was that the Board's state enforcement action was already pending against Coinbase. The state enforcement action was filed the day prior to this action, *see* Ex. A, and jurisdiction over the issues raised in this action had already vested in the state court. Therefore, events prior to the filing of the complaint here already mooted Coinbase's Motion. Second, on February 5, 2026, the state court issued a temporary restraining order enjoining Coinbase from operation in Nevada. *See* Ex. F. Thus, the enforcement action continues to proceed, further mooting Coinbase's Motion. And, for the additional reasons that follow, this Court may not and should not disturb the ongoing state court enforcement proceedings.

## II. The Anti-Injunction Act Prevents Federal Courts From Enjoining Ongoing State Court Proceedings

This Court is prohibited from enjoining or staying state-court proceedings by the Anti-Injunction Act, 28 U.S.C. § 2283. The Anti–Injunction Act ("Act") states: "A court of the United States *may not* grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* (emphasis added). The Act "is based upon considerations of federalism and speaks to a question of high public policy." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100 (9th Cir. 2008); *see also Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 286, 90 S. Ct. 1739, 1743, 26 L. Ed. 2d 234 (1970) ("Obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case."). The Act's prohibition "is not a minor revetment to be easily overcome; it is a fortress which may only be penetrated

through the portals that Congress has made available." *Negrete,* 523 F.3d at 1100. In analyzing whether an injunction is prohibited, the Supreme Court has counseled that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297, 90 S. Ct. 1739, 1748, 26 L. Ed. 2d 234 (1970)). The grant of an injunction under the Anti-Injunction Act is reviewed de novo, but if "an injunction falls within the purview of the Anti-Injunction Act," it is reviewed "for abuse of discretion [of] the district court's decision whether to grant the injunction." *Sonner v. Premier Nutrition Corp.,* 49 F.4th 1300, 1304 (9th Cir. 2022) (quoting *California v. IntelliGender, LLC,* 771 F.3d 1169, 1176 (9th Cir. 2014)).

Here, Coinbase has failed to demonstrate that any exception to the Anti-Injunction Act applies, and the federal court therefore cannot grant the relief it seeks. There is no Act of Congress that grants federal courts exclusive control over gaming suits. *Compare Negrete,* 523 F.3d at 1100 (federal class actions do not uniformly provide exception to Anti-Injunction Act) *with In re Williams Sports Rentals, Inc.,* 90 F.4th 1032, 1035 (9th Cir. 2024) (Anti-Injunction Act did not apply because under the Limitation Act when an entity "posts security for the limitation amount, 'all claims and proceedings against the owner related to the matter in question shall cease.'") (quoting 46 U.S.C. § 30529(c)). No such scheme for the federal judiciary exists here. For the same reasons, there is no mandate for the federal courts to defend their jurisdiction over gaming regulation—indeed, gaming law is considered a quintessential exercise of state police power. *See Artichoke Joe's Cal. Grand Casino v. Norton,* 353 F.3d 712, 737 (9th Cir. 2003) (noting that "the regulation of gambling lies at the heart of the state's police power" (cleaned up))*; Ottenheimer v. Real Est. Div. of Nevada Dep't of Com.,* 91 Nev. 338, 341–42, 535 P.2d 1284, 1285 (1975)("[T]he State through its police powers may regulate business activities for the protection of the

public.")(internal citations omitted).[3] Finally, there is no final judgment from a federal court that needs to be effectuated. *Cf. Negrete,* 523 F.3d at 1100 (MDLs in a post-judgment posture provide an exception to Anti-Injunction Act) (collecting cases). Rather, Coinbase hopes to deprive a co-sovereign state court judiciary from reaching a final decision on the merits. The Court should find that the Anti-Injunction Act deprives it of the authority to enjoin the state court proceedings and deny injunctive relief.

Furthermore, because the Anti-Injunction Act prohibits the federal court from interfering in state court proceedings, Coinbase lacks standing to pursue a remedy in federal court. "To establish Article III standing," a prerequisite for subject matter jurisdiction, a plaintiff "must show (1) that they 'suffered an injury in fact that is concrete, particularized, and actual or imminent'; (2) 'that the injury was likely caused by the defendants;' and (3) 'that the injury would likely be redressed by judicial relief.'" Shulman v. Kaplan, 58 F.4th 404, 408 (9th Cir. 2023) (quoting *TransUnion LLC v. Ramirez,* —— U.S. ——, 141 S. Ct. 2190, 2203, 210 L.Ed.2d 568 (2021)). And to establish redressability, a plaintiff "must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). Thus, "even where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief. *See* ("Redressability requires an analysis of whether the court *has the power* to right or to prevent the claimed injury." M.S. v. Brown, 902 F.3d 1076, 1083 (9th Cir. 2018) (citing with approval *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017)).

Here, a federal court cannot enjoin the ongoing State Court Enforcement Action because the Anti-Injunction Act prohibits it. This Court therefore lacks the power to issue the specific relief sought by the Motion for a Temporary Restraining Order or Preliminary

---

[3] Indeed, Coinbase's local counsel has argued in a related proceeding that the federal court lacks *all* authority to consider whether contracts listed on a DCM are "swaps" within the Commodities Exchange Act. That assertion contradicts their current plea to assert federal jurisdiction here.

Injunction. And without a judicial remedy, Coinbase's injuries are not redressable. Coinbase lacks standing to pursue injunctive relief, and for this reason their motion should be denied.

### III. *Younger* Abstention Applies, and This Court Should Abstain From Interfering with the Ongoing State Court Enforcement Action

Coinbase cannot qualify for injunctive relief because the federal court should abstain. Comity and federalism place heavy restraints on federal courts who receive petitions to interfere with ongoing state proceedings. *See Younger v. Harris,* 401 U.S. 37, 43–45 (1971); *Nationwide Biweekly Administration, Inc. v. Owen,* 873 F.3d 716, 727 (9th Cir. 2017) ("Courts in the Ninth Circuit "must abstain in deference to state civil enforcement proceedings"). Federal courts may not interfere with state civil enforcement which "(1) are ongoing, (2) quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Id.* (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund,* 754 F.3d 754, 759 (9th Cir. 2014). A typical case deserving of *Younger* abstention involves a state actor initiating suit under state law following an investigation. *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 79–80, 134 S. Ct. 584, 592, 187 L. Ed. 2d 505 (2013) (collecting cases).

The motivating factor behind *Younger* abstention is comity between the state and federal systems. As the Ninth Circuit explained:

> The "underlying reason for restraining courts of equity" is the "notion of 'comity,' that is, a proper respect for state functions ... and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger,* 401 U.S. at 44, 91 S. Ct. 746. A federal-court inquiry into why a state attorney general chose to pursue a particular case, or into the thoroughness of the State's pre-filing investigation, would be entirely at odds with *Younger*'s purpose of leaving state governments "free to perform their separate functions in their separate ways." *Id.* It also would make the application of *Younger* turn on a complex, fact-intensive analysis, in tension with the Supreme Court's admonition that jurisdiction should be governed by "straightforward rules under which [courts] can readily assure themselves of their power to hear a case." *Hertz Corp. v. Friend,* 559 U.S. 77, 94, 130 S. Ct. 1181, 175 L.Ed.2d 1029 (2010).

*Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 737–38 (9th Cir. 2020).[4]

All elements of *Younger* abstention are satisfied here. First, it is obvious that the State Court Enforcement Action is ongoing. Currently pending before the First Judicial District Court is the Board's Complaint and application for a Temporary Restraining Order/Preliminary Injunction. The litigants remain in the pleading stages of that action, and the state court has not yet reached a final decision on the merits. Second, the enforcement action is quasi-criminal because the Board asserts that Coinbase has violated numerous provisions of Nevada law and seeks to enjoin those illegal activities. **Ex. A.** Moreover, should the First Judicial District Court enter an order granting the pending temporary restraining order or preliminary injunction, Nevada has a right to continue enforcement of that order without intervention of this Court. Third, the State Court Enforcement Action implicates an important state interest—the regulation of gaming and the protection of the public. The Nevada Legislature has codified the significance of the gaming industry to the state in NRS 463.0129(1)(a) (safe, legal gaming is "vitally important to the economy of the State and the general welfare of the inhabitants."). Similar interests, including run-of-the-mill consumer protection efforts, have been held sufficient to trigger *Younger* abstention. *See, e.g., Bristol-Myers Squibb,* 979 F.3d at 738. Fourth and finally, the State Court Enforcement Action permits Coinbase to raise any affirmative defenses, including the identical arguments they raise in this matter. Nothing prevents Coinbase from litigating these claims in state court other than their desire to deprive the state court of jurisdiction. For these reasons, this matter falls squarely within *Younger,* and the federal court should abstain from interfering with an ongoing state court action to enforce and resolve issues of state law.

/ / /

/ / /

---

[4] In applying these principles, the Ninth Circuit concluded that *Younger* abstention was warranted. *See id.* ("Accepting the companies' invitation to scrutinize the particular facts of a state civil enforcement action would offend the principles of comity at the heart of the *Younger* doctrine.")

## IV. Coinbase Has Not Satisfied the Requirements for Preliminary Injunctive Relief

To obtain relief in the preliminary stages of litigation, Coinbase must show irreparable harm, likelihood of success on the merits, and that the balance of interests tips in its favor. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). None of these requirements is satisfied here.

### A. Even If This Court Peeks at the Merits, Relief Should Be Denied Because Coinbase Has Suffered No Irreparable Harm

Coinbase cannot demonstrate that it will suffer an irreparable injury absent an injunction. "Under *Winter,* plaintiffs must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction." *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Irreparable harm requires that "remedies available at law, such as monetary damages, are inadequate to compensate" for the injury *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249–50 (9th Cir. 2013). Without irreparable harm, a court can deny injunctive relief without considering the remaining *Winter* factors. *Id.*

The majority of Coinbase's alleged potential harms are monetary: it claims that compliance with Nevada law would threaten its "nearly $1 trillion in trading volume" annually and "$500 billion in digital assets." Compl. ¶ 10. But monetary harms—even when incurred by state regulatory action—are reparable harms. CITE. Coinbase also claims that it will suffer reputational harm from the loss of its market share and the goodwill of customers who "trust" Coinbase. Compl. ¶ 11. But any disruption to Coinbase's operations, and subsequent loss business goodwill, is self-inflicted: Coinbase chose to enter Nevada—the state with the longest running and most comprehensive gaming regulations in the country—and it did so at full speed without bothering to check if their business plan complied with state law. The cost of compliance with presumptively valid state regulations is not irreparable harm; it is the cost of doing (legal) business. *Cf. Herb Reed Enters.*, 736 F.3d at 1250 ("platitudes" regarding loss of customer goodwill are insufficient to

demonstrate whether "irreparable injury is *likely* in the absence of an injunction") (emphasis in original; quotations omitted). Moreover, any damage to Coinbase's reputation is speculative; it relies on the presumptive outcome of the State Court Enforcement Proceedings which have only just begun. Because Coinbase can mitigate its economic damage by participating in the State Court Enforcement Action, it has other means to obtain the relief it seeks outside of a federal injunction. *See, e.g., Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR, 2011 WL 1211684, at *2 (D. Ariz. Mar. 30, 2011) (a plaintiff hoping for an injunction "must demonstrate that irreparable harm is real and significant, not speculative or remote."). By contrast, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303, 133 S. Ct. 1, 3, 183 L. Ed. 2d 667 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351, 98 S. Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers)). And Nevada's Gaming Control Board is charged with "statutory duties to preserve public confidence and trust in licensed gaming." *State Gaming Control Bd. v. Breen*, 99 Nev. 320, 322, 661 P.2d 1309, 1310 (1983) (citing NRS 463.0129).

For these reasons, Coinbase cannot demonstrate irreparable harm, and the Court should deny its request for injunctive relief without further inquiry.

### B.  Coinbase Is Not Likely to Succeed on the Merits

Multiple other so-called "prediction market" platforms have asserted the same arguments that Coinbase makes here. The failed argument is that because they are recognized by the CFTC,[5] they are exempt from Nevada's regulations. This argument has been soundly rejected by Judge Gordon. *North American Derivatives Exchange, Inc. v. State of Nevada*, Case No. 2:25-cv-00978-APG-BNW, ECF No. 105 (D. Nev. Oct. 14, 2025) (finding that events contracts are not swaps falling within the CFTC's exclusive jurisdiction and

---

[5] Unless and until Coinbase can demonstrate that every contract it has ever listed meets the statutory definition of a "swap" in 7 U.S.C. § 1a(47), it cannot demonstrate that it is subject to CFTC jurisdiction. For this reason alone, preliminary injunctive relief is premature. *See* 7 U.S.C. § 2(a)(1)(A) (defining transactions over which CFTC has jurisdiction).

denying motion for preliminary injunction to prevent regulation by the Board); *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, ECF No. 142, (D. Nev. Nov. 24, 2025) (dissolving preliminary injunction and finding that Kalshi was unlikely to succeed on the merits); *Robinhood Derivatives, LLC v. Dreitzer*, Case No. 2:25-cv-01541-APG-DJA, ECF No. 7 (D. Nev. Nov. 25, 2025) (same).

Even if using a sliding scale approach to obtain a TRO, as set forth in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), Coinbase cannot obtain relief because it cannot establish it will suffer irreparable harm, that the balance "tips sharply" in its favor, or that an injunction is in the public interest. Coinbase is in an even worse position than that of the plaintiff in *Robinhood Derivatives*, which failed to show it was entitled to a TRO. In that case, Judge Gordon found that Robinhood made a business decision to enter the Nevada markets even though the Board had already issued Kalshi a cease-and-desist letter, thus self-creating the risk of harm. Here, Coinbase made its contracts available in Nevada **after** numerous decisions finding that similar online platforms were unlikely to succeed on the merits of the same claims as Coinbase makes here. Coinbase took a clear risk entering the Nevada market armed with nothing but failed arguments in other cases. Thus, like Robinhood, it cannot obtain emergency relief.

### C. Coinbase Cannot Demonstrate that the Public Interest Tips In Its Favor

Finally, even if Coinbase raises some questions as to the merits of its claims (it does not), it cannot demonstrate that the public interest tips in its favor. Federal courts "will not grant a preliminary injunction. . . unless those public interests outweigh other public interests that cut in favor of *not* issuing the injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011).

Here, Coinbase has identified *no* public interest. Instead, it relies exclusively on harm to *its* business model, *its* consumers, and *its* market share. Even these alleged harms are private harms *to Coinbase*—not to the public as a whole. On the other hand, the public interest strongly favors State Defendants. As a procedural matter, Nevada has an interest

in enforcing its own laws regarding a matter of traditional state regulation. *State Gaming Control Bd. v. Breen*, 99 Nev. 320, 322, 661 P.2d 1309, 1310 (1983) (citing NRS 463.0129). And Nevada courts have an interest in interpreting state law. Those procedural considerations, in addition to the significant comity interests here, counsel against injunctive relief.

Substantively, the public also has an interest in the regulatory safeguards that Nevada law provides. Nevada has significant protections for under-21 residents and visitors, a robust suitability check for licensees, protection against money laundering, and consumer protections against predatory fees and pricing. *See, e.g.,* NRS 463.350; 463.1625, 463.164-165. No such protections are offered by the CFTC or Coinbase.[6] As Judge Gordon concluded, in the related *Kalshi* matter: "The traditional police powers of the states, which are considerable and longstanding, particularly in this state which has led the nation in gaming regulation and enforcement for decades, weigh heavily against Kalshi's harms." Kalshi Order, 11/24/25, Case No. 2:25-cv-575-APG-BNW, at 26. So too here. Because the public interest favors State Defendants, the Court should deny injunctive relief.

## CONCLUSION

Coinbase's emergency request for preliminary injunctive relief is not warranted. This Court is prevented from interfering with an ongoing state proceeding by the Anti-Injunction Act and *Younger* abstention. And in any event, Coinbase cannot meet the

/ / /

/ / /

/ / /

---

[6] Coinbase's argument that the state lacks a valid interest because it has taken reasonable litigation positions to facilitate prompt resolution of these issues is misguided. *See Hernandez v. State*, 118 Nev. 513, 523, 50 P.3d 1100, 1107 (2002) (state officials have prosecutorial discretion).

requirements for injunctive relief. This Court should deny the TRO and decline to enjoin the State Court Enforcement Action.[7]

DATED this 5th day of February, 2026.

>AARON D. FORD
>Attorney General
>
>By: */s/ Jessica E. Whelan*
>    Jessica E. Whelan (Bar No. 14781)
>      Chief Deputy Solicitor General - Litigation
>    Sabrena K. Clinton (Bar No. 6499)
>      Senior Deputy Attorney General
>    jwhelan@ag.nv.gov
>    sclinton@ag.nv.gov
>
>*Attorneys for Defendants*

---

[7] State Defendants are submitting this preliminary reply on an extremely expedited time frame. To that end, if the Court does not unequivocally deny Coinbase's request for relief, State Defendants would like additional time to further develop these arguments and be heard.