UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Coinbase Financial Markets, Inc, <br><br> Plaintiff <br><br> v. <br><br> Aaron D. Ford, et al., <br><br> Defendants | Case No. 2:26-cv-00256-CDS-MDC <br><br> **Order Denying the Plaintiff's Emergency Motion for a Temporary Order and Preliminary Injunction, and Dismissing the Plaintiff's Complaint** <br><br> [ECF Nos. 1, 4] |

Plaintiff Coinbase Financial Markets, Inc. brings this emergency request for declaratory and injunctive relief against defendants Aaron D. Ford, Mike Dreitzer, George Assad, Chandeni K. Sendall, Jennifer Togliatti, Rosa Solis-Rainey, Brian Krolicki, George Markantonis, and Abbi Silver. Compl, ECF No. 1; Mot. for TRO and PI, ECF No. 4. I ordered expedited briefing on the motion. *See* Min. order, ECF No. 19. Briefing is complete,[1] and having reviewed the filings, the court finds no supplemental briefing or oral argument is needed to resolve the motion. Because I find that Coinbase's motion for a TRO and PI would violate both the *Younger* abstention doctrine and the Anti-Injunction Act, I deny its motion.

I.  **Background**

This case arises out of a state court enforcement action pending before the First Judicial District Court in Carson City, Nevada (Case No. 26-OC-00030IB). *See* State compl., Pl.'s Ex. C, ECF No. 4-7. The defendants brought a civil enforcement action in Nevada state court (Case No. 26-OC-00030IB) ("the enforcement action") against Coinbase on the grounds that the company is engaged in unlawful "gaming" under the Nevada Gaming Control Act. ECF No. 1 at 4, ¶ 7. As alleged in the enforcement action, in January of 2025, Kalshi (a Commodity Futures Trading Commission (CFTC) – registered Designated Contract Market (DCM)) began listing event

---

[1] Opp'n, ECF No. 22; Reply, ECF No. 23.

contracts. *Id.* at 3, ¶ 5. Coinbase Financial Markets, Inc. is a CFTC-registered Future Commissions Merchant, and it serves as an intermediary for customers trading regulated derivatives listed on a DCM, including event contracts on Kalshi. *Id.* As further alleged, in January 2026, Coinbase began offering event-contract trading to its customers throughout the United States, including Nevada. *Id.* at 2, ¶ 3. Coinbase asserts that these event contracts are "paradigmatic swaps" defined by the Commodity Exchange Act, so they can only be traded on federally regulated exchanges that are subject to the exclusive jurisdiction of the CFTC. *Id.* at 2–3, ¶ 3.

Defendants dispute the contracts are "paradigmatic swaps." They contend Coinbase's offerings meet the NRS definitions of "gaming," "game," "sports pool," and "wager"[2]. *See* State court complaint, Defs.' Ex. A, ECF No. 22-2 at 18–28. As result, the defendants filed the enforcement action, seeking declaratory judgment that the Nevada Gaming Control Act prohibits Coinbase from "making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada without the required gaming licenses" and "to persons under the age of 21." ECF No. 1 at ¶ 7 (quoting Pl.'s Ex. C, ECF No. 4-7 at 10–13). The enforcement action included an application for an ex parte temporary restraining order and motion for preliminary injunction enjoining Coinbase from operating a market that offers event-based contracts without obtaining all required Nevada gaming licenses. *See* ECF No. 22-2 at 31–52. The court granted the ex parte temporary restraining order on February 5, 2026. *See id.* at 82–89.

The day before the ex parte TRO/PI was granted in state court, Coinbase initiated this action by filing a complaint together with an emergency motion for a temporary restraining order and preliminary injunction in this court. *See* ECF Nos. 1; 4. Coinbase asserts Nevada's attempt to prevent it from offering any event contracts in the state runs headlong into federal law, so it seeks injunctive relief to maintain the "status quo" pending the court's resolution of

---

[2] *See* NRS 463.0153 (defining "gaming"); NRS 463.0152 (defining "game"); NRS 463.160 (defining "sports pool"); NRS 463.0193 (defining "wager").

2

the TRO and to prevent Nevada from obtaining ex parte relief in state court that would prohibit Coinbase from offering Nevada users access to CFTC regulated event contracts. ECF No. 4 at 9–10.

The defendants oppose Coinbase's motion on four grounds: (1) it is moot in light of the state court's issuance of an ex parte temporary restraining order on February 5, 2026; (2) the Anti-Injunction Act prevents the gamesmanship between dually sovereign judicial systems; (3) *Younger* abstention prevents federal courts from interfering in ongoing criminal or civil proceedings of important state interest; and (4) Coinbase is unlikely to succeed on any of its claims. *See* ECF No. 22.

## II.   Discussion

Coinbase seeks both a TRO and a PI. A federal court's analysis of a request for a TRO is substantially identical to that for a preliminary injunction, so I analyze them together here. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.1 (9th Cir. 2001). It is long established that to obtain a TRO, a plaintiff must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

While the parties appropriately address the *Winter* factors in their briefs, I find it unnecessary to assess those factors on the merits because, for the reasons explained herein, the Court has no power to grant the relief Coinbase seeks given the *Younger* abstention doctrine and the Anti-Injunction Act. I address each in turn.

### A.   The *Younger* abstention doctrine applies here.

The *Younger* abstention doctrine "forbids federal courts from staying or enjoining pending state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1147 (9th Cir. 2007) (citation modified). For *Younger* abstention to apply, the state proceedings must (1) be ongoing, (2) implicate important state interests, and (3) provide an adequate opportunity to litigate the

plaintiff's federal constitutional claims. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Kenneally v. Lungren*, 967 F.2d 329, 331–32 (9th Cir. 1992). Enforcement actions can implicate important state interested. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013) (civil enforcement proceedings initiated by the state to sanction a plaintiff for some wrongful act, including investigation that culminates into a complaint or charges, meets this requirement). Here, all three elements are met.

By way of its TRO motion, Coinbase seeks to prevent the defendants from applying Nevada gambling's laws to federally regulated transactions that are subject to uniform federal law under the exclusive jurisdiction of the Commodity Futures Trading Commission. ECF No. 1 at 2, ¶ 1. But there is an on-going state enforcement action pending in the First Judicial District Court, so the first prong showing abstention is appropriate is met. *See Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004) (federal courts generally abstain from granting any relief that would interfere with pending state judicial proceedings).

Second, important state interests are implicated: the regulation of gaming and protection of the public. As cited by defendants, the "Nevada Legislature has codified the significance of the gaming industry to the state in NRS 463.0129(1)(a) (safe, legal gaming is "vitally important to the economy of the State and the general welfare of the inhabitants."). ECF No. 22 at 10. Coinbase avers by arguing that the state lacks any interest in enforcing "preempted state laws" and extraordinary circumstances apply. ECF No. 23 at 3. But the fact that the state brought the enforcement action to begin with belies Coinbase's argument of a lack of interest. *See Platkin v. Discord Inc.*, 2025 U.S. Dist. LEXIS 233298, at *22 (D. N.J. Sept. 10, 2025) (declining to exercise federal jurisdiction because doing so would disrupt the State of New Jersey's strong sovereign interest in enforcing its own laws). Thus, Coinbase's argument is unpersuasive.

Third, the state proceeding provides Coinbase adequate opportunity to litigate its claims. Indeed, Coinbase does not assert that it is somehow prevented from litigating these claims in state court. Rather it argues that the merits and timing of the enforcement action, or

alternatively, asserts that "extraordinary circumstances" warrant the exercise of federal jurisdiction. I disagree. Exemption from *Younger* is warranted upon a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 54. While the motion clearly shows that Coinbase is frustrated by the timing of state's enforcement action, frustration is neither an exception to *Younger* nor a reason for this court to exercise its limited jurisdiction. As such, I find abstention is warranted so Coinbase's motion is denied.

### B. Anti-Injunction Act

Even if the *Younger* abstention ground did not apply, I would deny Coinbase's motion because the Anti-Injunction Act precludes this action. The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *See Fortunet v. eQube Int'l, Inc.*, 2016 U.S. Dist. LEXIS 10454, at *11 (D. Nev. Jan. 27, 2016). The Anti-Injunction Act also applies to declaratory judgments if those judgments have the same effect as an injunction. *California v. Randtron*, 268 F.3d 891, 896 (9th Cir. 2001), *opinion amended and superseded on other grounds on denial of reh'g sub nom.*, 284 F.3d 969 (9th Cir. 2002).

Coinbase asserts that it seeks a TRO and PI to maintain the status quo pending the court rendering a decision on its PI and to "prevent [the] defendants from enforcing preempted Nevada law against Coinbase." ECF No. 4 at 10. Specifically, it asserts that Nevada is misreading the federal law and misusing emergency, ex parte procedures to do so. *Id.* at 9. It further asserts a now moot argument, that is, that unless this court acts promptly, Nevada may obtain this extraordinary ex parte relief in state court. *Id.*

In response, the defendants argue that Coinbase fails to demonstrate that any exception to the Anti-Injunction Act applies, ECF No. 22 at 7, and there is no act of Congress that grants federal courts exclusive control over gaming suits. *Id.* The defendants further assert that because

the Anti-Injunction Act prohibits the federal court from interfering in state court proceedings, Coinbase lacks standing to pursue a remedy in federal court.

In reply, Coinbase argues that its motion is not seeking to stay the proceedings, but rather it is seeking an "injunctive relief" to stop the State from enforcing Nevada gambling laws against Coinbase's event contracts. ECF No. 23 at 4. It further argues that to the extent the Act applies, the exception permitting a federal court to issue an injunction "where necessary to aid of its jurisdiction" applies. *Id.* at 5 (quoting 28 U.S.C. § 2283). Coinbase contends that its motion seeks to protect the jurisdiction of federal courts, which is a well-established exception. *Id.* at 3.

I find Coinbase's arguments unpersuasive. The Act "limits the power of federal courts, in cases properly before them, to enjoin state court proceedings." *Gamble v. General Foods Corp.*, 846 F.2d 51, 52 (9th Cir. 1988). The Act is "an absolute bar to any federal court action that has the effect of staying a pending state court proceeding." *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002). "[D]oubts as to the propriety of a federal injunction against state court proceedings **should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.**" *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1271 (9th Cir. 1982) (emphasis added). Because there is a pending state case directly related to the action brought by Coinbase, and no exception applies, this action is barred by the Anti-Injunction Act.

### III. Conclusion

IT IS HEREBY ORDERED that because the court abstains from hearing this case pursuant to *Younger v. Harris*, the complaint **[ECF No. 1] is dismissed** without prejudice.

IT IS FURTHER ORDERED that the plaintiff's emergency motion for a temporary restraining order and preliminary injunction **[ECF No. 4] is denied**.

The Clerk of Court is kindly directed to close this case.

Dated: February 7, 2026

_____
Cristina D. Silva
United States District Judge